**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MAIN PASS OIL GATHERING COMPANY, LLC,** | CIVIL ACTION NO. 25-00890 |
| Plaintiff, | JUDGE ELDON E. FALLON |
| v. | MAG. JUDGE EVA J. DOSSIER |
| **SUBSEA 7 MARINE (US) INC.,** | |
| Defendant. | |

**ANADARKO'S MEMORANDUM IN SUPPORT OF**
**UNOPPOSED MOTION FOR INTERVENTION PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 24**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................iii

INTRODUCTION ...........................................................................................................1

MOVANTS FOR INTERVENTION ..............................................................................1

BACKGROUND .............................................................................................................2

LAW & ARGUMENT......................................................................................................3

    I.     ANADARKO SATISFIES THE REQUIREMENTS FOR
          INTERVENTION AS A MATTER OF RIGHT ............................................4

         a.  Anadarko's Application for Intervention is Timely.................................4

         b.  Anadarko Has Direct, Substantial, and Legally Protectable Interests
            in the Proceedings ......................................................................................6

         c.  Disposition of the Action May Impair Anadarko's Ability to
            Protect Its Interests...................................................................................7

         d.  Anadarko's Interests are Not Adequately Represented by
            Existing Parties .........................................................................................9

    II.    ALTERNATIVELY, THE COURT SHOULD PERMIT
          ANADARKO TO INTERVENE PERMISSIVELY .....................................10

CONCLUSION...............................................................................................12

ase 2:25-cv-00890-ILRL-EJD    Document 10-1    Filed 09/11/25    Page 3 of 17

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Petroleum Inst. v. Dep't of Interior*, No. 2:21-cv-02506,
2022 WL 1297802 (W.D. La. Apr. 29, 2022) ................................................................11

*Association of Professional Flight Attendants v. Gibbs*,
804 F.2d 318 (5th Cir. 1996) ...........................................................................................5

*Bibles v. City Of Irving, Tex.*, No. CIV.A.308-CV-1795-M,
2009 WL 2252510 (N.D. Tex. July 28, 2009) ..................................................................6

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014) ....................................................*passim*

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) ..............................................9

*Gen. Land Off. of Tex. v. FWS*, No. A-17-CA-538-SS,
2017 WL 10741921 (W.D. Tex. Nov. 30, 2017) ............................................................10

*Hanover Ins. Co. v. Superior Lab. Servs., Inc.*,
179 F. Supp. 3d 656 (E.D. La. 2016) ..............................................................................10

*Heitman v. Sunbeam Prods., Inc.*, No. CIV.A. 14-2875, 2015 WL 5025445 (W.D. La. Aug. 19, 2015) ...........................................................................................................................6

*In re Settoon Towing, L.L.C.*, 859 F.3d 340, 344-45 (5th Cir. 2017 ...........................7, 8

*Miller v. Vilsack*, No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022) ........4, 6, 9

*New Orleans Pub. Serv., Inc. v. United Gas Pipeline Co.*,
732 F.2d 452 (5th Cir. 1984) ............................................................................................6

*Ruiz v. Estelle*, 161 F.3d 814 (5th Cir. 1998) ................................................................5

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) ........................................................5

*State v. Biden*, 338 F.R.D. 219 (W.D. La. 2021) ...........................................................5

*Tex. v. U.S.*, 805 F.3d 653 (5th Cir. 2015) .....................................................................7

*Trans Chem. Ltd. v. Cina Nat. Mach. Imp. & Exp. Corp.*,
332 F.3d 815 (5th Cir. 2003) .........................................................................................10

*U.S. v. Am. Tel. & Tel. Co.*, 642 F.2d 1285 (D.C. Cir. 1980) .........................................9

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n,*
834 F.3d 562 (5th Cir. 2016) ................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 24 ................................................................................. *passim*

## INTRODUCTION

Anadarko Petroleum Corporation and Anadarko US Offshore LLC (collectively herein, "Anadarko"), by and through undersigned counsel, respectfully move under Federal Rule of Civil Procedure 24 to intervene in this action to assert claims against Main Pass Oil Gathering Company, LLC ("MPOG") under the Oil Pollution Act ("OPA") to recover removal costs, costs incurred to mitigate property damage, and loss of profits resulting from Anadarko's loss of use of the Horn Mountain and Marlin platforms. Anadarko brings breach of contract claims against MPOG in the alternative. Anadarko further seeks to intervene in this action to assert claims against Subsea 7 Marine (US) Inc. ("Subsea 7") under the Louisiana Products Liability Act ("LPLA") to recover damages caused by the failure of the Subsea 7 Connector. Anadarko seeks intervention as of right under Rule 24(a)(2), or alternatively, permissive intervention under Rule 24(b).

## MOVANTS FOR INTERVENTION

**ANADARKO PETROLEUM CORPORATION** is a corporation organized under the laws of the state of Delaware with its principal place of business in The Woodlands, Texas. **ANADARKO US OFFSHORE LLC** is a limited liability company organized under the laws of the state of Delaware with its principal place of business in The Woodlands, Texas.

Anadarko is the fourth-largest oil and gas producer in the deep-water Gulf of America, operating 8 strategically located deep-water floating platforms, the highest number among all the deep-water operators, and producing from 18 active fields while owning a working interest across 300 blocks, including approximately 1.1 million net acres.

1

**<u>BACKGROUND</u>**

On the evening of November 15, 2023, a segment of MPOG's pipeline system began to leak crude oil into the navigable waters off the coast of Louisiana. For nearly twelve hours, MPOG failed to respond to the leak. By the time the leak was isolated, the line had released about 26,979 barrels of crude oil into the water—approximately 1.1 million gallons.

Around 6:00 a.m. on the morning of November 16, nearly twelve hours after MPOG's supervisory control and data acquisition system first indicated something was awry, Anadarko was first contacted by MPOG indicating that MPOG had lost communications with meters on the MPOG pipeline system. MPOG requested that Anadarko shut in two of its production platforms: the Horn Mountain platform and the Marlin Platform. Anadarko complied with MPOG's request and assembled its Incident Command Team to assist MPOG with its response. Unfortunately for Anadarko, the shut in of the Horn Mountain and Marlin platforms was not short lived. Anadarko was unable to use these platforms to produce crude oil for several months.

On May 1, 2024 and February 11, 2025, the United States Coast Guard designated MPOG as the Responsible Party under the Oil Pollution Act for the release. On November 12, 2024, the National Transportation Safety Board published its findings that the cause of the leak was the failure of a Subsea 7 Connector. Anadarko provided MPOG with a presentment letter dated December 20, 2024 asserting claims for removal costs, loss of use damages, and costs incurred to man and maintain the platforms while shut-in. Anadarko provided MPOG with a supplemental presentment letter on August 20, 2025. Anadarko is

2

still in the process of identifying the full scope the damages it seeks to recover and will supplement its presentments and its pleadings in this matter as necessary.

On May 7, 2025, MPOG filed the above-captioned action against Subsea 7. In its Complaint, MPOG claims, among other things, that "MPOG … faces potential claims for damages from third parties, including state authorities in Louisiana, federal authorities, and MPOG's customers. Any such alleged damages would arise directly from the failure of the Subsea 7 Connector, and these damages are based on Subsea 7's negligent design of the Connector and Subsea 7's failure to warn." (R. Doc. 1, MPOG Pet. ¶ 51). MPOG identifies these third-party claims as damages under the LPLA. MPOG further asserts a claim for contribution under OPA against Subsea 7. (R. Doc. 1, MPOG Pet. ¶¶ 53-54). Under both theories of recovery, Anadarko's claims against MPOG are a crucial element of the damages MPOG may recover from Subsea 7.

Anadarko seeks intervention in this action to assert claims against MPOG under the Oil Pollution Act to recover removal costs, costs incurred to mitigate property damage to the Horn Mountain and Marlin platforms, and loss of profits resulting from Anadarko's loss of use of its platforms. Anadarko brings breach of contract claims against MPOG in the alternative. Anadarko further seeks to intervene in this action to assert claims against Subsea 7 under the Louisiana Products Liability Act to recover damages caused by the failure of the Subsea 7 Connector.

## LAW & ARGUMENT

Federal Rule of Civil Procedure 24(a)(2) requires a federal court to permit intervention of a non-party who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a

practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Federal Rule of Civil Procedure 24(b) permits a federal court to allow intervention of non-parties that tender "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). "Rule 24 is to be liberally construed, with doubts resolved in favor of the proposed intervenor." *Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *2 (5th Cir. Mar. 22, 2022) (internal citations omitted); *accord Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014); *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016). "The inquiry is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate." *Brumfield*, 749 F.3d at 341 (internal citation omitted). Federal courts "should allow intervention when no one would be hurt and the greater justice could be attained." *Wal-Mart Stores, Inc.*, 834 F.3d at 565.

## I.    ANADARKO SATISFIES THE REQUIREMENTS FOR INTERVENTION AS A MATTER OF RIGHT

The Fifth Circuit utilizes a four-part test to evaluate motions to intervene under Rule 24(a)(2): (1) the application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit. *Brumfield*, 749 F.3d at 341-42. Anadarko satisfies each of these elements.

### A.    Anadarko's Application for Intervention is Timely

Anadarko's Motion for Intervention is timely. In assessing timeliness, Fifth Circuit courts consider: "(1) the length of time applicants knew or should have known of their

interest in the case; (2) prejudice to existing parties caused by applicants' delay; (3) prejudice to applicants if their motion is denied; and (4) any unusual circumstances." *Ruiz v. Estelle*, 161 F.3d 814, 827 (5th Cir. 1998). "The timeliness inquiry is contextual; absolute measures of timeliness should be ignored." *State v. Biden*, 338 F.R.D. 219, 223 (W.D. La. 2021). Of predominant concern is the potential for prejudice caused to the existing parties; notably, "prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994).

In *Wal-Mart Stores, Inc.*, the Fifth Circuit found the intervenor's motion was timely because it was filed "before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded." 834 F.3d at 565-66. Furthermore, in *Association of Professional Flight Attendants v. Gibbs*, intervention was timely where five months had lapsed since the movants knew or should have known of their interests in the case. 804 F.2d 318 (5th Cir. 1996).

This action was first filed on May 7, 2025. (R. Doc. 1). However, Subsea 7 was not served until July 15, 2025. (R. Doc. 8). Subsea 7 filed its Defenses and Answer on September 4, 2025. (R. Doc. 9). Discovery has not commenced, and no meaningful events have occurred in the case. A scheduling order has not yet been entered, and as such there are no court-ordered deadlines that might impose limitations on the timeliness of an intervention. Anadarko has promptly filed its Motion to Intervene and thus no prejudice to existing parties will result. As a result, timeliness is not at issue.

## B. Anadarko has Direct, Substantial, and Legally Protectable Interests in the Proceedings

Anadarko has a "direct, substantial, and legally protectable interest" in the subject of the action. *Brumfield*, 749 F.3d at 343. For such an interest to be "legally protectable," the claim asserted by the applicant must be one as to which the applicant is a real party in interest. *New Orleans Pub. Serv., Inc. v. United Gas Pipeline Co.*, 732 F.2d 452, 464 (5th Cir. 1984). This inquiry "is a flexible one, which focuses on the particular facts and circumstances surrounding each application measured by a practical rather than technical yardstick." *Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *2 (5th Cir. Mar. 22, 2022).

An interest in the original plaintiff's recovery is a sufficient interest for purposes of intervention. *See, e.g., Bibles v. City Of Irving, Tex.*, No. CIV.A.308-CV-1795-M, 2009 WL 2252510 (N.D. Tex. July 28, 2009) (finding that a lien on an eventual recovery made in exchange for compensation for legal services was a sufficient interest to allow intervention as of right); *Heitman v. Sunbeam Prods., Inc.*, No. CIV.A. 14-2875, 2015 WL 5025445 (W.D. La. Aug. 19, 2015) (permitting an insurer to intervene as a matter of right to protect its subrogation claim). In MPOG's complaint against Subsea 7, MPOG claims, among other things, that "MPOG … faces potential claims for damages from third parties, including state authorities in Louisiana, federal authorities, and MPOG's customers. Any such alleged damages would arise directly from the failure of the Subsea 7 Connector, and these damages are based on Subsea 7's negligent design of the Connector and Subsea 7's failure to warn." (R. Doc. 1, MPOG Pet. ¶ 51). MPOG identifies these third-party claims as damages under the LPLA. MPOG further asserts a claim for contribution under OPA against Subsea 7. (R. Doc. 1, MPOG Pet. ¶¶ 53-54). Under both theories of recovery,

Anadarko's claims against MPOG are a crucial element of the damages MPOG may recover from Subsea 7. Thus, the very subject matter of MPOG's claims concern the scope of Anadarko's rights to bring its claims for damages and the extent of MPOG's liability to Anadarko. Here, the Court's findings as to MPOG's claims against Subsea 7 will necessarily involve findings concerning the existence, nature, and amount of damages owed to Anadarko. Because the resolution of these issues directly affects Anadarko's legally protectable interest in asserting its own claims for damages against MPOG, Anadarko's interest in this case lies at the very heart of the dispute.

Further, under OPA, a responsible party may not seek contribution until it has first paid claims presented to it. *In re Settoon Towing, L.L.C.*, 859 F.3d 340, 344-45 (5th Cir. 2017) ("OPA makes the responsible party 'strictly liable for costs and damages and first in line to pay any claims for removal costs or damages that may arise under OPA.' … [O]nce the Responsible Party pays compensation, it may seek partial or complete repayment from others by means of contribution or subrogation."). As such, MPOG may not recover from Subsea 7 on contribution claims arising from damages owed to Anadarko under OPA until MPOG has first satisfied its obligations to Anadarko. To date, MPOG has not honored any claim submitted to it by Anadarko.

## C. Disposition of the Action may Impair or Impede Anadarko's Ability to Protect Its Interests

A proposed intervenor must be "so situated that the disposition of the action may, as a practical matter, impair or impede [its] ability to protect its interest." Fed. R. Civ. P. 24(a)(2). The requisite showing is "only that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is *minimal*." *Brumfield*, 749 F.3d at n.2.

The disposition of MPOG's claims against Subsea 7 without Anadarko's participation would substantially impair Anadarko's ability to protect its interests. MPOG's claims against Subsea 7 are, in part, predicated on damages it allegedly owes to Anadarko. (R. Doc. 1, Pet. ¶ 51) ("MPOG … faces potential claims for damages from third parties … including MPOG's customers. Any such alleged damages would arise directly from the failure of the Subsea 7 Connector, and these damages are based on Subsea 7's negligent design of the Connector and Subsea 7's failure to warn."); *In re Settoon Towing, L.L.C.*, 859 F.3d 340, 352 (5th Cir. 2017) (""OPA … grants to an OPA Responsible Party the right to receive contribution from other entities who were partially at fault for a discharge of oil. Specifically, a Responsible Party may recover from a jointly liable third party any damages it paid to claimants, including those arising out of purely economic losses."). As such, the extent of MPOG's liability to Anadarko—and the nature and scope of those damages—may necessarily be adjudicated in this case. If Anadarko is not a party, critical determinations may be made regarding Anadarko's rights and entitlements without its direct involvement or input. In particular, there is a significant risk of prejudicial or inconsistent rulings regarding the amount and character of MPOG's obligation to Anadarko, which could undermine or even foreclose Anadarko's ability to fully recover from MPOG in related proceedings. Further, findings made by this Court with respect to Subsea 7's liability to parties as a manufacturer may prejudice Anadarko's ability to bring products liability claims against Subsea 7 in a different forum, as Anadarko will necessarily be required to adjudicate such claims in light of the findings of this Court. Intervention is therefore necessary to ensure that Anadarko can properly assert its interests, present evidence, and be heard on issues that directly affect the claims it seeks to bring.

### D.  Anadarko's Interests Are Not Adequately Represented by Existing Parties

Finally, a proposed intervenor must show that its interest is inadequately represented by the existing parties. This burden is "minimal," but "cannot be treated as so minimal as to write the requirement completely out of the rule." *Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *2 (5th Cir. Mar. 22, 2022). "The movant need not show that the representation by existing parties will be, for certain, inadequate." *Brumfield*, 749 F.3d at 345. Indeed, a proposed intervenor "need only show that 'the representation *may* be inadequate." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverages Comm'n*, 834 F.3d 562, 569 (quoting *Tex. v. U.S.*, 805 F.3d 653, 662 (5th Cir. 2015)); *see also U.S. v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980) (stating that a petitioner "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee").

The Fifth Circuit has established two presumptions of adequate representation that proposed intervenors must overcome. *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996). "First, when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee, a presumption of adequate representation arises." *Id.* This presumption is not applicable here because all parties to this litigation are private parties. Second, adequate representation is presumed "when the would-be intervenor has the same ultimate objective as a party to the lawsuit. In such cases, the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id*. A showing of "differences in the objectives" of an intervenor and existing party establishes that representation may be inadequate. *Wal-Mart Stores, Inc.*, 834 F.3d at 569. This presumption is equally

9

inapplicable as Anadarko does not have the same ultimate objective as either MPOG or Subsea 7 as Anadarko seeks to bring claims to recover damages from both parties.

Neither MPOG nor Subsea 7 adequately represents Anadarko's interests in this litigation; Anadarko seeks intervention to recover damages for itself. MPOG's position is adverse to Anadarko because MPOG will seek to minimize Anadarko's recoverable damages against it and to shift or reduce its liability to Anadarko through contribution from Subsea 7. Subsea 7, in turn, is concerned primarily with defending itself against MPOG and Anadarko's claims and has no obligation or incentive to protect Anadarko's independent right to recover damages directly from MPOG. Further, Subsea 7's position is directly contrary to Anadarko with respect to the products liability claims Anadarko seeks to bring against it. Neither MPOG nor Subsea 7 will advance arguments or evidence that safeguard Anadarko's entitlement to damages or ensure that any findings of liability properly reflect the nature and extent of MPOG's or Subsea 7's obligations to Anadarko. As a result, Anadarko's interests are uniquely situated and cannot be represented by either MPOG or Subsea 7.

## II.  ALTERNATIVELY, THE COURT SHOULD PERMIT ANADARKO TO INTERVENE PERMISSIVELY

Alternatively, Anadarko meets the standards for permissive intervention pursuant to Rule 24(b). "[P]ermissive intervention is appropriate where 'an applicant's claim or defense and the main action have a question of law or fact in common." *Trans Chem. Ltd. v. Cina Nat. Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 824 (5th Cir. 2003) (quoting Fed. R. Civ. P. 24(b)(2)). "[D]istrict courts have broad discretion in allowing intervention." *Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, 179 F. Supp. 3d 656, 667 (E.D. La. 2016) (internal citation omitted).

Rule 24(b) instructs courts to consider whether permissive intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b); *see, eg., Am. Petroleum Inst. v. Dep't of Interior*, No. 2:21-cv-02506, 2022 WL 1297802, at *5 (W.D. La. Apr. 29, 2022) (denying permissive intervention because it "could expand the case to issues not before this Court, potentially increasing costs and delaying resolution of this matter"); *Gen. Land Off. of Tex. v. FWS*, No. A-17-CA-538-SS, 2017 WL 10741921, at *4 (W.D. Tex. Nov. 30, 2017) (denying permissive intervention because it "would result in duplication and delay of the case's resolution," but granting leave to file an amicus). As discussed above, Anadarko's Motion for Intervention is timely as the proceedings are in the very early stages and a scheduling order has not yet been entered into in this matter. Further, the claims Anadarko seeks to bring in intervention are consistent with the issues the existing parties have already brought before this Court.

MPOG seeks to collect from Subsea 7 damages arising from claims asserted against MPOG by third parties. (R. Doc. 1, MPOG Pet. ¶¶ 2, 51, 58). As such, MPOG's claims against Subsea 7 are, in part, predicated on the claims Anadarko seeks to assert against MPOG in this forum. Thus, the resolution of these issues requires common determinations as to the existence and extent of MPOG's liability to Anadarko.

With respect to MPOG's and Anadarko's products liability claims against Subsea 7, both sets of claims will require common factual determinations including, *inter alia*, the cause of the November 2023 oil release event, the Connector's intended use, the unreasonably dangerous nature of the Connector, the availability of alternative designs, and Subsea 7's failure to warn. Addressing these issues in the same forum will result in greater judicial efficiency and reduce the risk of inconsistent results.

## **CONCLUSION**

For the reasons stated herein, Anadarko seeks to intervene as of right under Rule 24(a)(2). In the alternative, Anadarko respectfully requests that the Court exercise its discretion to grant permissive intervention under Rule 24(b).

Respectfully submitted,

*/s/ Kerry J. Miller*
James R. Swanson (La. Bar No. 18455)
Stephen J. Herman (La. Bar No. 23129)
Kerry J. Miller (La. Bar No. 24562)
Zoe C. Vogel (La. Bar No. 40982)
FISHMAN HAYGOOD LLP
201 St. Charles Ave, Ste 4600
New Orleans, LA 70170
Tel: (504) 586-5252
Fax: (504) 586-5250
jswanson@fishmanhaygood.com
sherman@fishmanhaygood.com
kmiller@fishmanhaygood.com
zvogel@fishmanhaygood.com

*Counsel for Anadarko Petroleum
Corporation, Anadarko US Offshore LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing pleading has been served upon all counsel of record through the CM/ECF filing system with the Clerk of Court of the United States Court for the Eastern District of Louisiana, this 11th day of September, 2025.


_____/s/ Kerry J. Miller_____

Kerry J. Miller

13