**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MAIN PASS OIL GATHERING COMPANY, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-890** |
| **SUBSEA 7 MARINE** | **SECTION "B" (3)** |

## ORDER

Considering Plaintiffs in Intervention Anadarko Petroleum Corporation and Anadarko US Offshore LLC's (collectively, "Anadarko") Motion for Leave to File Second Supplemental and Amended Complaint (Rec. Doc. 72),

**IT IS HEREBY ORDERED** that the motion (Rec. Doc. 72) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall file the Second Supplemental and Amended Complaint (Rec. Doc. 72-1) into the record.

**IT IS FURTHER ORDERED** that MPOG's motion to dismiss Anadarko's OPA claim for removal costs (Rec. Doc. 27 ) is **DENIED WITHOUT PREJUDICE**.

### I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

For a full recitation of the factual background, the Court discussed it at length in its prior Order and Reasons (Rec. Doc. 71) addressing the Plaintiff's motion to dismiss. On August 31, 2026, the Court Denied in part Main Pass Oil Gathering Company's motion to dismiss Anadarko's claim for economic damages. (Rec. Doc. 71.) The Court further advised that MPOG's motion to dismiss Anadarko's Oil Pollution Act ("OPA") claim for removal costs would be granted unless Anadarko filed, within fourteen days of entry of the order, an amended complaint addressing the deficiencies relating to compliance with the National Contingency Plan ("NCP"). (Id.) Anadarko filed the instant motion on September 14, 2026, within the time allowed. With its proposed Second

Supplemental and Amended Complaint, Anadarko alleges that the actions it took and the costs it incurred in response to the MPOG Release were consistent with the NCP and supplies additional factual allegations relating to those efforts. (Rec. Doc. 72-1 ¶¶ 109–116, 129.)

## II. LAW AND ANALYSIS

### a. Legal Standard

Under Federal Rule of Civil Procedure 15(a)(2), a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts commonly afford a plaintiff at least one opportunity to cure pleading deficiencies before dismissing a claim with prejudice for failure to state a claim. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Leave to amend "is in no way automatic, but the district court must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)). A court may deny leave where the proposed amendment would be futile. *Id.*; *Jamieson v. Shaw*, 772 F.2d 1205, 1208–09 (5th Cir. 1985). An amendment is futile "if it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports*, 751 F.3d at 378. The futility inquiry therefore applies the Rule 12(b)(6) standard: the amended pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts well-pleaded facts as true but does not credit legal conclusions couched as factual allegations. *Id.*

OPA makes a responsible party liable for "all removal costs incurred by any person for acts taken by the person which are consistent with the National Contingency Plan." 33 U.S.C. § 2702(b)(1)(B). In part the NCP provides:

> (3) If the OSC determines that effective and immediate removal, mitigation, or prevention of a discharge can be achieved by private party efforts, and where the discharge does not pose a substantial threat to the public health or welfare of the United States, determine whether the responsible party or other person is properly carrying out removal. Removal is being done properly when:
>
> (i) The responsible party is applying the resources called for in its response plan to effectively and immediately remove, minimize, or mitigate threat(s) to public health and welfare and the environment; and
>
> (ii) The removal efforts are in accordance with applicable regulations, including the NCP. Even if the OSC supplements responsible party resources with government resources, the spill response will not be considered improper, unless specifically determined by the OSC.

40 C.F.R.§ 300.320

**b. Analysis**

The proposed amendment cures the deficiency identified in the Court's prior order. Anadarko no longer rests on a bare assertion of NCP consistency. It now alleges specific facts showing that its response was coordinated with the responsible party and connected to the federal response structure. (Rec. Doc. 72-1 ¶¶ 109–116.) Anadarko alleges that it contracted and deployed multiple vessels to conduct a subsea inspection of the MPOG pipeline system immediately following the release, and that it coordinated with the Third Coast Entities on the location and timing of the inspection, hourly status updates, safety near other platforms, and a live stream permitting the Third Coast Entities to monitor the inspection. (Id. at ¶¶ 109–111.) It alleges that a Third Coast representative boarded an Anadarko-contracted vessel under a boarding agreement, and that two United States Coast Guard personnel were flown to an Anadarko-contracted vessel in furtherance of the response. (Id. ¶¶ 112–113.) It further alleges that the information gathered from the inspections was reported to the Incident Command Center, which included the Federal On-Scene Coordinator ("FOSC"), and that Third Coast conveyed to the Unified Command that Anadarko's support was "invaluable" to the effort. (Id. ¶¶ 115–116.)

The Court does not credit paragraph 114's assertion that Anadarko's actions "were consistent with the National Contingency Plan" as a factual allegation, because it states a legal conclusion. *See Iqbal*, 556 U.S. at 678. Nor does the Court rest its ruling on the allegation, made upon information and belief, that the FOSC directed or approved Anadarko's actions. (Rec. Doc. 72-1 ¶ 115.) The Court notes, however, that pleading on information and belief is permissible where the relevant facts are peculiarly within the possession and control of the opposing party or a third party. *See Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018). Whether and how the FOSC evaluated Anadarko's conduct is information held by the federal government and the responsible party rather than by Anadarko. Taken together, these allegations permit a reasonable inference that Anadarko's inspection efforts were integrated into, and known to, the federally coordinated response, and that those efforts served the NCP's priority of stabilizing the situation by locating and securing the source of the discharge. *See* 40 C.F.R. § 300.317(b).

Whether Anadarko's costs were in fact directed by the FOSC or determined by the FOSC to be consistent with the NCP is a factual question better resolved on a developed record. At this stage, Anadarko has alleged enough to state a plausible claim for removal costs. The amendment is therefore not futile, and MPOG has identified no undue delay, bad faith, or undue prejudice that would supply a substantial reason to deny leave. *See Marucci Sports, L.L.C.,* 751 F.3d at 378.

New Orleans, Louisiana, this 28th day of September 2026

Senior United States District Judge