phelps

Phelps Dunbar LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
504 566 1311

July 2, 2026

48020-1

Arthur R. Kraatz
Partner
arthur.kraatz@phelps.com
Direct 504 584 9344

**<u>Via Email: stephen.crain@bracewell.com</u>**

Stephen Crain
Bracewell LLP
711 Louisiana Street, Suite 2300
Houston, TX 77002

Re: *Main Pass Oil Gathering Company, LLC v. Subsea 7 Marine (US) Inc.*
Civil Action No. 25-890

Dear Stephen:

As you know, we represent Subsea 7 in this matter. We write to you regarding MPOG's responses to Subsea 7's Interrogatories and Requests for Production of Documents. As detailed below, MPOG's responses are deficient in multiple respects. We are scheduling a Rule 37 conference to discuss the responses on July 13, 2026 at 2:00 pm. To facilitate a productive discussion, we attempt to identify the most significant issues below. In many respects, the evasiveness of the responses prevents us from fully assessing the completeness or responsiveness of the answers, but we have endeavored to identify the most significant issues at this stage.

First, we note that the responses contain a series of general objections, and nearly every response contains boilerplate objections. These objections are impermissible, unenforceable, and must be withdrawn. *See e.g.*, *Lee v. Aramark Facility Servs., LLC*, No. 20-2049, 2021 WL 6070448, at *3 (E.D. La. July 15, 2021) ("General or boilerplate objections are insufficient. An objection to a discovery request is boilerplate when it merely states the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request. General, boilerplate, unsupported objections that fail to state their grounds with specificity are improper and result in waiver of those objections."); *Pitre v. Epps*, No. 18-1562, 2018 WL 3094367, at *2 (E.D. La. June 22, 2018) (same).

Additionally, MPOG's objections fail to specify what (if any) information has been withheld based on each objection. This omission obscures the completeness of MPOG's answers. If no information was withheld based on an objection, then the response should explicitly state as much. If information was withheld based on an objection, Subsea 7 is entitled to know what was withheld to evaluate the adequacy of each response. For this reason alone, we request that the

discovery responses be supplemented to remove all of the improper general and boilerplate objections and to clarify what information, if any, was withheld based on the objections.

Second, MPOG's responses to Subsea 7's Requests for Production fail to identify any documents with the required specificity. Instead, MPOG generally references production of "non-privileged documents that are responsive to this Request" without specifying which documents respond to which requests. This failure to identify documents by Bates number is equivalent to not responding at all. *See Rosalez Funez v. E.M.S.P., LLC*, No. 16-1922, 2016 WL 5337981, at *3 (E.D. La. Sept. 23, 2016) ("Federal Rule of Civil Procedure 37(a)(4) states that an evasive answer is treated the same as not responding to the request. Here, by dumping more than one thousand documents on the, the Defendants have not properly responded to the individual requests for production. Rather, the Defendants should have attempted to identify which documents were responsive to which requests."). Subsea 7 "is entitled to have responsive documents identified for each of its requests for production of documents" and requests MPOG to accordingly supplement its responses. *Mr. Mudbug, Inc. v. Bloomin' Brands, Inc.*, No. 15-5265, 2017 WL 111268, at *2 (E.D. La. Jan. 11, 2017).

Third, in response to Request for Production Nos. 2-9, 11-25, 27-28, and 34, MPOG states it will produce "non-privileged documents that are responsive to this Request." Similarly, in response to Request for Production Nos. 3, 10, 11, 13, 14, 15-17, 20-21, 25-26, and 30, MPOG specifically objects to producing responsive documents on attorney-client privilege and work product grounds. Despite invoking these privileges, MPOG has not provided a privilege log in connection with its document production. *See* Fed. R. Civ. P. 26(b)(5)(A); *see also In re papst Licensing, GmbH Patent Litig.*, C.A. MDL 1298, 2001 WL 1135268, at *2 (E.D. La. Sept. 19, 2001) (A "privilege log must identify each document and provide basic information, including the author, recipient, date and general nature of the document."). Subsea 7 requests MPOG to produce a privilege log identifying all documents withheld on privilege grounds and confirm it has produced all non-privileged documents responsive to each request.

Fourth, contrary to Subsea 7's request for responsive documents in native form with metadata preserved, MPOG instead produced all documents in .PDF form. In line with its request, MPOG is entitled to responsive documents in native form and requests MPOG to accordingly supplement its document production. *See Express Lien, Inc. v. Nat'l Ass'n of Credit Mgmt.*, No. 13-3323, 2014 WL 12767814, at *3 (E.D. La. Mar. 20, 2014) (granting motion to compel native documents and metadata specifically requested in discovery).

In addition to these overarching issues with the discovery responses, there are specific issues with individual requests, which we detail below.

*Response to RFP No. 3*

MPOG objects to Subsea 7's request for corporate documents as vague and ambiguous, claiming that "organizational structure" and "organizational charts" are unclear. MPOG also objects on relevance grounds. To be clear, RFP No. 3 requests corporate and ownership relationships between MPOG and its affiliates. This information is directly relevant because multiple MPOG affiliates, such as Third Coast Infrastructure, LLC and Panther Operating Company are implicated in the underlying events, as documents from the NTSB investigation

demonstrate. Subsea 7 is entitled to discovery reflecting MPOG's corporate relationship with its affiliates when its affiliates' actions are relevant to the claims and defenses at issue. *See State Nat'l Ins Co. v. Settoon Towing*, No. 07-4230, 2010 U.S. Dist. LEXIS 164763, at *21-23 (E.D. La. May 21, 2010) (granting motion to compel organizational chart). Subsea 7 requests MPOG withdraw these objections and produce all responsive documents.

*Response to RFP No. 5*

MPOG's objections based on relevance and breadth are meritless. Contracts relating to MPOG's ownership of the pipeline – the equipment at the center of MPOG's claims – are plainly relevant. MPOG's assertion that "contracts or agreement" and "acquisition of the pipeline" are vague phrases is not credible. Nor has MPOG made any showing that this request is unduly burdensome or overly broad. Subsea 7 requests MPOG to remove these objections from its response, identifying all documents responsive to this request, and supplementing its document production with any documents that are responsive to this request that have not been produced.

*Response to RFP No. 10*

MPOG objects that "in line inspection vendor report" and "inline inspection data" are vague and ambiguous. This objection ignores MPOG's own records. MPOG's affiliate, Third Coast, submitted a Supplemental Submission to the NTSB. *See* NTSB Accident # PLD24FR001, Rec. Doc. 3. In that Supplemental Submission, Third Coast represented, "NDT Global completed an In-Line Inspection (ILI) run on the MPOG Pipeline," and that this inspection "confirms the CGF connector in question was in the proper position and that there were no indications of anomalies, deformations, or excessive metal loss to the pipeline in that area." *Id.* pp. 23-25. Subsea 7 requests MPOG to supplement its response by removing this objection, identifying all documents responsive to this request, and supplementing its document production with any documents that are responsive to this request that have not been produced.

*Response to RFP Nos. 13 and 14*

MPOG objects to Subsea 7's requests for all communications relating to the (1) leak and (2) the design, performance, inspection, or alleged defects in the connector" as overly broad and unduly burdensome to the extent the request for "*all* communications necessarily calls for communications unrelated to the parties' claims or defenses." By limiting the request to communications relating to the leak itself, Subsea 7's request is appropriately tailored both as to time and scope. Moreover, any and all communications in MPOG's possession relating to the leak, design, performance, inspection, and alleged defects are squarely relevant to the claims and defenses at issue in this product liability case, considering the leak is the occurrence giving rise to MPOG's alleged claims, and MPOG alleges that the connector failed due to a design defect. Subsea 7 requests MPOG to supplement its response by removing this objection, identifying all documents responsive to this request, and supplementing its document production with any documents that are responsive to this request that have not been produced.

*Response to RFP No. 18*

MPOG objects to Subsea 7's request for documents evidencing costs and expenditures associated with the oil spill as overly broad and unduly burdensome by reading a defined term ("Person") not included in the request. To clarify, Subsea 7 seeks all documents supporting MPOG's damages for the claims it is pursuing. Of course, these are documents that MPOG is obligated to produce even without a discovery request, thus there can be no reasonable objection to this request. Subsea 7 requests MPOG to supplement its response by removing this objection, identifying all documents responsive to this request, and supplementing its document production with any documents that are responsive to this request that have not been produced.

*Response to RFP No. 20*

This request seeks all documents showing MPOG's loss of product, the loss of use, and/or lost revenue. Subsea 7 requests MPOG to supplement its response by removing its vagueness objection, identifying all documents responsive to this request, and supplementing its document production with any documents that are responsive to this request that have not been produced.

*Response to RFP No. 22*

This request seeks all contracts relating to MPOG's operation of the Pipeline. MPOG's contracts are squarely relevant in light of MPOG's allegations relating to its customers' potential claims and damages regarding same. *See, e.g.*, Compl., ¶¶ 36, 51. Nor has MPOG demonstrated how Subsea 7's request is unduly burdensome. Subsea 7 requests MPOG to supplement its response by removing this objection, identifying all documents responsive to this request, and supplementing its document production with any documents that are responsive to this request that have not been produced.

*Response to RFP No. 23*

MPOG objects to communications regarding the Main Pass Oil Gathering system's condition pre-dating the leak by three years as vague and unduly burdensome. Subsea 7's request is reasonably limited in scope by three years and directly relevant to MPOG's allegation that the Connector failed. Subsea 7 is requesting communications relating to the physical condition – an "interpretation" MPOG offers in its own discovery responses – of the Main Pass Oil Gathering System around the area where the CGF was installed, predating the leak by three years. Subsea 7 requests MPOG to supplement its response by removing this objection, identifying all documents responsive to this request, and supplementing its document production with any documents that are responsive to this request that have not been produced.

*Response to RFP No. 25*

Subsea 7's request for MPOG's documents and communications relating to insurance claims it made regarding the leak and oil connector are not only directly relevant to the claims and defenses at issue but discoverable, as well. Subsea 7 requests MPOG to supplement its response by removing its objections as to breadth, burden, and relevance, identifying all documents

responsive to this request, and supplementing its document production with any documents that are responsive to this request that have not been produced.

*Response to RFP Nos. 3, 12, 13, 16, 17, 21, 27, 28*

MPOG objects to these requests on the basis that the requested information is equally accessible to Subsea 7. That is not a valid discovery objection, nor is it a plausible one under the facts. Please remove this objection and supplement produce any documents withheld on the basis of the objection.

*Improper Vagueness Objections*

MPOG lodges vagueness objections throughout its responses to Subsea 7's Requests for Production, including in its responses to RFP Nos. 4, 5, 8, 9, 12, 20, 22, 23, and 27. In many of these responses, MPOG uses the vagueness objection as a pretext to improperly rewrite and narrow the scope of Subsea 7's requests. For example, in response to RFP No. 8, which seeks MPOG's Integrity Management Program documents addressing geotechnical hazards, underwater pipeline stability, or inspections following significant events (such as hurricanes), MPOG objects that "significant events" and "November 2023 incident" are vague and ambiguous, then states that it "will interpret these phrases as referring to severe meteorological phenomena and the Leak, respectively." Similarly, in response to RFP No. 9, which seeks inspection, survey, or maintenance records concerning the "condition or stability" of the pipeline, MPOG objects that "condition" and "stability" are vague and ambiguous, then announces it "will interpret these phrases as referring to the physical integrity of the pipeline." The same issue occurs in response to RFP Nos. 4, 5, 12, 20, 22, 23, and 27, among others. This approach is improper for two reasons. First, the challenged terms cannot reasonably be described as vague. Second, even if any ambiguity existed, MPOG is not entitled to unilaterally rewrite Subsea 7's discovery requests to narrow their scope. Subsea 7 requests MPOG to withdraw all vagueness objections and to provide complete, non-narrowed, responses to each of these requests.

*Answers to Interrogatory Nos. 5 and 12*

MPOG's answers to Interrogatory Nos. 5 and 12 are nonresponsive. Interrogatory No. 5 asks MPOG to "[i]dentify and describe each specific alternative design for a pipeline connector" that MPOG contends was feasible and available at the time of design or installation, and to state the basis for MPOG's contention that such design was feasible and how it would have prevented the Leak. Instead of providing a substantive answer, MPOG states only that its "answer to this interrogatory will rely on expert testimony" and that it "will supplement" later. Interrogatory No. 12 similarly asks MPOG to "[i]dentify each alternative design, device, or method" that MPOG contends should have been used instead of the Connector, to describe its basis for claiming the alternative was feasible and safer, and to cite supporting industry standards, publications, or expert opinions. MPOG again declines to provide a substantive answer, stating that its response "will rely on expert testimony" and that it "will supplement." These answers are evasive. MPOG must have a factual basis for its Complaint's allegations regarding alternative designs and feasibility, and it cannot defer its discovery obligations to some future date on the pretext that expert discovery has not yet occurred. Subsea 7 is entitled to MPOG's factual contentions and requests MPOG to provide substantive, complete answers to Interrogatory Nos. 5 and 12.

*Answers to Interrogatory Nos. 4, 7, 9, and 11*

In its answers to Interrogatory Nos. 4, 7, 9, and 11, MPOG represents that some documents "will be produced" without specifying when or where. In Interrogatory Nos. 4 and 11, MPOG states that it has "copies of the installation and repair procedures for the Connector that will be produced." In Interrogatory No. 7, MPOG states that "records of the ILIs will be produced" and that "[t]o the extent MPOG has historical records of inspections of the MPOG pipeline prior to its ownership, those will be produced." In Interrogatory No. 9, MPOG states that it "will produce germane records in its possession" of various government investigations and third-party testing. None of these representations identify when or where the documents will be produced, or whether they have already been produced. Moreover, three months have now passed since MPOG served its responses, thus MPOG has had ample time to produce these documents. If these documents have already been produced, MPOG must id

entify them by Bates number or file name so that Subsea 7 can confirm the responsiveness of MPOG's produced documents. If not, MPOG should produce the documents without further delay.

*Answer to Interrogatory No. 14*

Interrogatory No. 14 requests MPOG to itemize and describe its claimed damages. MPOG responds that it "has not quantified its damages and will supplement its response to this interrogatory." MPOG provides no date by which it will do so. At the very least, MPOG must have preliminary damages figures available by now, given that the underlying incident occurred nearly three years ago and MPOG states it has incurred damages for incident response, investigation participation, potential fines, and pending third-party claims. Subsea 7 is entitled to this information and requests MPOG to supplement its answer to Interrogatory No. 14 with itemized damages figures.

*Answer to Interrogatory No. 10*

MPOG identifies seven MPOG personnel and represents its counsel "will confer with opposing counsel regarding the areas in which MPOG employees may have specific knowledge. Subsea 7 is entitled to a complete written answer to the interrogatory. While we welcome cooperative discussion of this issue, MPOG still must provide a formal and complete written response. Please supplement the interrogatory to do so.

We look forward to discussing these issues with you at the discovery conference and to receiving MPOG's supplemental responses rectifying these issues.

Sincerely,

Arthur R. Kraatz