**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **MAIN PASS OIL GATHERING COMPANY, LLC** | § | |
| | § | **CIVIL ACTION NO. 25-00890** |
| ***Plaintiff*,** | § | |
| | § | **JUDGE IVAN L.R. LEMELLE** |
| **v.** | § | |
| | § | **MAG. JUDGE EVA J. DOSSIER** |
| **SUBSEA 7 MARINE (US) INC.** | § | |
| | § | |
| ***Defendant.*** | § | |

**DEFENDANT-IN-INTERVENTION MAIN PASS OIL GATHERING COMPANY, LLC'S MEMORANDUM IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS ANADARKO PETROLEUM CORPORATION AND ANADARKO US OFFSHORE LLC'S SECOND SUPPLEMENTAL AND AMENDED COMPLAINT-IN-INTERVENTION**

Defendant-in-Intervention Main Pass Oil Gathering Company, LLC ("MPOG") files this Memorandum in Support of its Partial Motion to Dismiss the claims brought against it by Anadarko Petroleum Corporation and Anadarko US Offshore LLC (collectively, "Anadarko") in Anadarko's Second Supplemental and Amended Complaint-in-Intervention (Dkt. 74) ("Second Amended Complaint") under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## I. INTRODUCTION

Anadarko's Second Amended Complaint asserts claims for economic loss damages and alleged "response and removal costs" against MPOG pursuant to the Oil Pollution Act of 1990 ("OPA" or "OPA 90") and in the alternative, under the parties' contracts. MPOG previously moved to dismiss these claims (the "Prior Motion") because, among other reasons, Anadarko's alleged

[1] On November 21, 2025, MPOG filed a Motion to Dismiss Anadarko Petroleum Corporation's and Anadarko US Offshore LLC's Complaint-in-Intervention (Dkt. 27) (the "Prior Motion"). The Prior Motion was pending when Anadarko filed its First Supplemental and Amended Complaint on August 8, 2026. Thereafter, the Court entered an Order on MPOG's Prior Motion, which provided Anadarko with the opportunity to replead with respect to its removal-cost-related allegations under OPA. Order and Reasons at 1 (Dkt. 71). Anadarko did so in its Second Amended Complaint (Dkt. 74).

economic loss damages are barred by the express terms of the parties' contracts and are unrecoverable as a matter of law. As relevant here, by Order and Reasons dated August 31, 2026, the Court denied the Prior Motion with respect to Anadarko's claims for economic damages, stating that "[w]hether Anadarko may recover damages depends on whether Anadarko has sufficiently pleaded gross negligence." However, based on new and binding Fifth Circuit caselaw published several months after the close of briefing for the Prior Motion, this statement of law is incorrect.

Accordingly, MPOG brings this partial motion to dismiss and requests an order dismissing Anadarko's claims for economic loss damages under OPA and under the parties' contracts.[2]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal if a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While a court must accept as true all of the factual allegations contained in the complaint, conclusory statements and legal conclusions are not entitled to the assumption of truth. *Id.* at 678. Rather, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

[2] MPOG's Prior Motion sought dismissal of Anadarko's claim for recovery of its alleged removal costs under OPA based on Anadarko's failure to allege certain statutory requirements. As the Court observed in its Order of September 28, 2026, granting Anadarko's *ex parte* motion for leave to file the Second Amended Complaint (Dkt. 73), Anadarko has supplemented its allegations to address these pleading defects in response to the Court's August 31 Order and Reasons. Although MPOG disputes the merits of Anadarko's allegations, this Motion does not contest them, and MPOG does not seek dismissal of Anadarko's claims to recover its alleged removal costs.

## III. ALLEGED FACTS

Anadarko produces crude oil and condensate from the MC-127 ("Horn Mountain") and VK-915 ("Marlin") platforms in the Eastern Gulf of Mexico. 2d Am. Compl. (Dkt. 74) ¶ 27. This crude oil is then shipped into the MPOG pipeline system "pursuant to agreements between Anadarko and MPOG." *Id.* These agreements govern "the gathering of crude oil and condensate produced by Anadarko at the Horn Mountain and Marlin platforms and . . . the delivery of such crude oil and condensate to Anadarko or its designee at the agreed upon delivery point." *Id.* ¶ 28.

Anadarko alleges that on the evening of November 15, 2023, crude oil was released into the navigable waters off the coast of Louisiana (the "Incident").[3] *Id.* ¶ 1. A representative of MPOG contacted Anadarko to inform Anadarko that MPOG had lost communication with meters on the MPOG pipeline system. *Id.* ¶ 107. MPOG then advised Anadarko to shut in production on both the Marlin and Horn Mountain platforms. *Id.* After production was shut in, "Anadarko mobilized helicopters and various vessels" to conduct inspections for a "potential leak." *Id.* ¶ 109. Ultimately, the MPOG Pipeline System resumed service in "late April 2024." *Id.* ¶ 66.

On November 12, 2024, the National Transportation Safety Board ("NTSB") published its findings that the cause of the Incident was the failure of a Subsea 7 Connector which was a component of MPOG's facilities.[4] *Id.* ¶ 6.

---

[3] MPOG does not concede the accuracy of Anadarko's representation of the facts. The allegations repeated here are those necessary in the context of this motion to dismiss. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (court must accept "all well-pleaded facts as true" when ruling on a motion to dismiss).

[4] MPOG includes this fact as alleged by Anadarko for context only. Anadarko's complaint relies heavily on "findings" of the NTSB which is expressly prohibited, and which will not be recited here. As stated in 49 U.S.C. § 1154(b): "**No part** of a report of the Board, related to an accident or an investigation of an accident, may be admitted into evidence **or used in a civil action for damages** resulting from a matter mentioned in the report." (Emphasis added); *see also* 49 C.F.R. § 835.2 (stating that "no part of a Board accident report may be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such reports"). The Fifth Circuit has confirmed that "[f]ederal law flatly prohibits the NTSB accident report from being admitted into evidence in any suit for damages arising out of accidents investigated by the NTSB." *Campbell v. Keystone Aerial Survs., Inc.*, 138 F.3d 996, 1001 (5th Cir. 1998). The NTSB report is inadmissible, but Anadarko's reliance on the report does not impact the legal bases for the dismissal of Anadarko's claims.

On December 20, 2024, Anadarko served MPOG with a letter in which it alleged claims for removal costs and economic damages resulting from the Incident. *Id.* ¶ 118. These purported damages included "removal costs[,] . . . costs incurred to man and maintain both the Horn Mountain and Marlin platforms during the shut in, and losses due to the delayed sales of crude oil during the shut in." *Id.* On January 23, 2025, MPOG responded to Anadarko's letter and denied the claims in full. *Id.* ¶ 119. Anadarko thereafter intervened in the instant suit. On August 6, 2026, Anadarko filed its Amended Complaint (Dkt. 60).

On August 31, 2026, the Court entered its Order and Reasons on MPOG's Prior Motion (Dkt. 71). Thereafter, Anadarko filed its Second Amended Complaint (Dkt. 74).

## IV. ARGUMENT

Anadarko has alleged two causes of action and seeks three categories of damages. Under OPA 90, Anadarko pleads entitlement to: (i) response and removal costs; (ii) property damages; and (iii) "loss of use" damages, which are "measured by, *inter alia*, delayed sales, lost production revenue, and lost profits" and "includ[e] loss of profits, impairment of earning capacity, and costs incurred to mitigate harm to its platforms . . . ." 2d Am. Compl. (Dkt. 74) ¶¶ 10, 130 & 138. Under Anadarko's alternative breach-of-contract cause of action, Anadarko seeks (i) "removal costs incurred to respond to the MPOG Release," (ii) "costs incurred to mitigate potential property damage," and (iii) "lost profits suffered as a result of the shut-in." *Id.* ¶ 148. In other words, Anadarko alleges the same sets of damages for both of its causes of action.

With the exception of its alleged removal costs[5] and the value of Anadarko's oil released during the Incident,[6] Anadarko has not stated a claim for recovery of these damages. Anadarko's pleaded damages are consequential damages that Anadarko is contractually barred from recovering. And the Fifth Circuit has now expressly held that contractual waivers of consequential damages—regardless of fault—are enforceable under Texas law, which governs the relevant contracts. Accordingly, Anadarko's claims for consequential damages must be dismissed.

**A. Anadarko's Claims For Consequential Damages Are Barred By Contract And Must Be Dismissed.**

Anadarko's claims transparently seek to recover consequential damages from MPOG. Per the Second Amended Complaint, as noted above, Anadarko's "loss of use" damages under OPA are measured by "delayed sales, lost production revenue, and lost profits during the shut-in period." 2d Am. Compl. ¶ 10. And Anadarko's breach of contract cause of action expressly seeks consequential damages like "lost profits." *Id.* ¶ 148. But Anadarko cannot state a claim for these damages because the parties' governing contracts expressly and unambiguously waive them, and such waivers are enforceable under Texas law (as interpreted by binding Fifth Circuit precedent) in accordance with their plain terms.

***1. Anadarko's Contract Cause of Action Seeks Contractually Unavailable Damages.***

As alleged in the Second Amended Complaint, MPOG gathers and transports crude oil from the Horn Mountain and Marlin platforms pursuant to certain contracts. *Id.* ¶ 28. Those

[5] *See supra* note 2.

[6] Under the parties' gathering agreements, MPOG is "responsible for" and bears the risk of loss with respect to "the value of Dedicated Oil lost while in Gatherer's custody and control" when such loss is attributable to MPOG's gross negligence. Ex. 1-C (Horn Mountain Oil Gathering Agreement) §§ 13.1(b), 13.6; Ex. 1-B (2002 Marlin Oil Gathering Agreement) § 12.4; Ex. 1-A (1996 Marlin Oil Gathering Agreement) § 12.4. MPOG denies that it was grossly negligent, but MPOG does not seek dismissal on that basis at this procedural stage.

contracts (collectively, the "Contracts") are[7]: (i) the January 19, 1996 Oil Gathering Agreement (the "1996 Marlin Oil Gathering Agreement," attached as Exhibit 1-A);[8] (ii) the January 2, 2002 Oil Gathering Agreement (the "2002 Marlin Oil Gathering Agreement," attached as Exhibit 1-B);[9] and (iii) the January 24, 2022 Oil Gathering Agreement (the "Horn Mountain Oil Gathering Agreement," attached as Exhibit 1-C). Anadarko fails to identify the specific contractual provisions it alleges MPOG breached; however, the Contracts are the only agreements that govern MPOG's "gathering of crude oil and condensate produced by Anadarko at the Horn Mountain and Marlin platforms," as alleged in the Second Amended Complaint. 2d Am. Compl. (Dkt. 74) ¶ 28.

In the Contracts, Anadarko expressly and unambiguously waived any right to recover consequential damages—defined by the Contracts to include lost profits, business interruption, lost products, and delayed production. Notably, too, these contractual waivers are operative regardless of the culpability (or lack of culpability) of the conduct giving rise to the waived damages. For example, the Horn Mountain Oil Gathering Agreement precludes recovery of

> special, indirect, incidental, or <u>*consequential damages*</u>, or *damages arising from* <u>*lost profits*</u>*, business interruption, lost products, or* <u>*delayed production*</u> ('Consequential Damages') . . . irrespective of whether such losses or actions for such damages are based upon contract, warranty, *negligence, strict liability, or any other remedy at law or equity*.

Ex. 1-C (Horn Mountain Oil Gathering Agreement) § 13.4 (emphasis added). The other Contracts contain substantially similar language. *See* Ex. 1-A (1996 Marlin Oil Gathering Agreement) § 12.2

---

[7] Contracts referenced in a complaint and central to the plaintiff's claims may be considered part of the pleadings when (1) attached to a defendant's motion to dismiss and (2) if there is no dispute that the attached contract is the same one referenced in the complaint and central to the plaintiff's claims. *AHBP LLC v. Lynd Co.*, 649 F. Supp. 3d 371, 401 (W.D. Tex. 2023) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

[8] Anadarko has succeeded to the rights of Amoco Production Company under the 1996 Marlin Oil Gathering Agreement.

[9] Anadarko has succeeded to the rights of BP Exploration & Production Inc. under the 2002 Marlin Oil Gathering Agreement.

(waiving the recovery of consequential damages, "irrespective of whether claims or actions for such damages are based upon contract, warranty, negligence, strict liability, or any other remedy at law or equity"); Ex. 1-B (2002 Marlin Oil Gathering Agreement) § 12.2 (same). In sum: Each contract governing MPOG's "gathering of [Anadarko's] crude oil and condensate" waives recovery of the consequential damages (including lost profits) that Anadarko now seeks to recover.

Such contractual provisions are enforceable under Texas law, which governs the Contracts, regardless of the level of fault that triggers liability. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 231 (Tex. 2019); *see* Ex 1-A (1996 Marlin Oil Gathering Agreement) § 10.3 (Texas choice-of-law); Ex. 1-B (2002 Marlin Oil Gathering Agreement) § 10.3 (same); Ex. 1-C (Horn Mountain Oil Gathering Agreement) § 10.2 (same). Anadarko has elsewhere noted that, under Texas law, parties cannot waive liability for gross negligence (which Anadarko has alleged) in advance. Anadarko Resp. to Mot. to Dismiss (Dkt. 37) at 3–4 (citing *Zachry Const. Corp. v. Port of Houston Auth. of Harris Cnty.*, 449 S.W.3d 98, 116 (Tex. 2014)). This is, of course, true. But the waivers contained in the Contracts are not waivers of *liability* but of specific categories of *damages*, and Texas law strictly demarcates that distinction. Unless they expressly provide otherwise, *damages-limiting* provisions are generally enforceable, irrespective of the level of fault that gives rise to the existence of liability in the first instance. *See, e.g.*, *Bombardier Aerospace Corp.*, 572 S.W.3d at 230–31 (applying a limitation-of-liability clause providing that "[n]either party hereto may be held liable to the other party for any indirect, special or consequential damages and/or punitive damages for any reason" to reverse an award of punitive damages against an adjudged fraudster); *see also Great Hans, LLC v. Liberty Bankers Life Ins. Co.*, 2019 WL 1219110, at *9 (Tex. App.—Dallas Mar. 15, 2019, no pet.) (applying *Bombardier* to liquidated damages provision limiting damages in event of intentional breach).

In July 2026, several months after the close of briefing on MPOG's Prior Motion, the Fifth Circuit applied *Bombardier* and likewise affirmed enforcement of a contractual damages-limitation provision. *Alta Power, LLC v. Gen. Elec. Int'l, Inc.*, 180 F.4th 681, 688–89 (5th Cir. 2026). In *Alta Power*, the appellant argued that a consequential-damages waiver was unenforceable in light of its allegations of fraudulent inducement. In a lengthy opinion examining the reasoning of *Bombardier*, Judge Engelhardt rejected the appellant's arguments and observed that *Bombardier*'s logic extends beyond punitive-damages waivers to waivers of consequential damages. *Id.* at 689. As the court explained, where "direct damages are available under the [w]aiver," parties cannot be said to have waived their claim "but only a measure of damages" flowing from their claim. *Id.* (citing *Bombardier*, 572 S.W.3d at 232). Thus, *Bombardier*'s core holding—that bargained-for damage limitations are enforceable in accordance with their plain terms—extends to "protect[ions] . . . against consequential-damage liability" where the contractual counterparties "are sophisticated, represented parties negotiating at arm's-length[.]" *Id.*; *see also BigCommerce, Inc. v. Cover Genius Warranty Servs., LLC*, 2025 WL 1270110, at *10 (W.D. Tex. Feb. 27, 2025) (applying *Bombardier* and enforcing a waiver of consequential and incidental damages). That same logic applies here.

Under *Alta Power*'s binding interpretation of Texas law, Anadarko's allegations of liability arising from MPOG's purported gross negligence have no bearing on the applicability of the Contracts' consequential-damages waivers. There can be no allegation that Anadarko and MPOG (or their respective predecessors-in-interest) were not sophisticated, represented parties negotiating at arm's-length. Nor can Anadarko allege that the Contracts waive claims for gross negligence wholesale; direct damages, as defined under the Contracts, remain available.[10] In fact,

[10] *See supra* note 6.

the Contracts are clear that the breadth of the waivers—waiving consequential damages arising from *any* reason—was not the result of simple oversight or inattention; the parties fully intended to waive such categories of damages flowing from gross negligence (or even intentional misconduct). For example, in Sections 13.2 and 13.4 of the Horn Mountain Oil Gathering Agreement, the parties agreed to a series of indemnities (relating to "Illness, Injury or Death" and "Property Damage," respectively) that expressly did not apply "to the extent [the specified category of injury was] caused by the gross negligence or willful misconduct of the indemnitee." Ex. 1-C (Horn Mountain Oil Gathering Agreement) §§ 13.2, 13.4. The other Contracts contain substantially similar language in similar contexts that excludes gross negligence from the ambit of the parties' mutual indemnities. *See* Ex. 1-A (1996 Marlin Oil Gathering Agreement) § 12.1; Ex. 1-B (2002 Marlin Oil Gathering Agreement) § 12.1. In other words, these sophisticated, well represented parties knew how to exclude gross negligence from indemnity and release language, but they chose not to do so in the context of the limiting recovery of consequential damages. That choice is enforceable. *See Alta Power*, 180 F.4th at 689; *see also Bombardier*, 572 S.W.3d at 232 ("We must respect and enforce terms of a contract that parties have freely and voluntarily entered."); *James Constr. Grp., LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 403 (Tex. 2022) ("Texas courts regularly enforce unambiguous contract language agreed to by sophisticated parties in arms-length transactions.").

Because it waived its right to recover consequential damages—including "damages arising from lost profits, business interruption, lost products, or delayed production," Ex. 1-C (Horn Mountain Oil Gathering Agreement) § 13.4—and because that waiver is valid and enforceable under Texas law based on the Fifth Circuit's recent binding interpretation, Anadarko cannot state a claim to recover consequential damages on its cause of action for breach of contract. And

because of that inability, as discussed below, Anadarko likewise cannot state a claim for such damages under OPA.

### *2. Anadarko Cannot Use OPA to Sidestep the Contractual Bar on Consequential Damages.*

OPA is not a get-out-of-jail-free card for retrospectively regretted bargains. Section 13.4 of the Horn Mountain Oil Gathering Agreement waives Anadarko's entitlement to consequential damages "irrespective of whether such losses or actions for such damages are based upon contract, warranty, negligence, strict liability, or ***any other remedy at law*** or equity." *Id.* § 13.4 (emphasis added); *see also* Ex. 1-A (1996 Marlin Oil Gathering Agreement) § 12.2 (same); Ex. 1-B (2002 Marlin Oil Gathering Agreement) § 12.2 (same). By their plain terms, then, the Contracts' waivers of consequential damages apply equally to Anadarko's breach-of-contract cause of action *and* to Anadarko's OPA cause of action, which seeks a "remedy at law" arguably afforded by 33 U.S.C. § 2701, *et seq.*

Moreover, the Horn Mountain Oil Gathering Agreement contains a "remedies cumulative" clause that states:

> *Except as expressly provided herein*, the rights, obligations and remedies created by this Agreement are cumulative and in addition to any other rights, obligations or remedies otherwise available at law or in equity. Nothing herein shall be considered an election of remedies.

Ex. 1-C (Horn Mountain Oil Gathering Agreement) § 16.11 (emphasis added). By their inclusion of the underlined clause, the parties emphasized that other potentially available remedies "at law or in equity" were subject to the exceptions and limitations of the Horn Mountain Oil Gathering Agreement. So, notwithstanding the general availability of consequential economic damages under OPA, Anadarko has bound itself not to seek such damages, whether under OPA or any other theory of potential recovery. Put bluntly, Anadarko cannot mask its economic loss claims as claims under

OPA 90 and survive dismissal. The parties' agreements make clear that the types of damages sought by Anadarko are waived under *any* theory of recovery.

Furthermore, OPA itself does not bar or preempt such agreements between private parties. In fact, OPA preserves them. OPA expressly states that "[n]othing in [OPA] shall . . . affect, or be construed or interpreted to affect or modify in any way the obligations of any person under . . . State law, including common law." 33 U.S.C. 2718. Anadarko's obligations under the Contracts, which are creatures of common law, are therefore unaffected. *Id.*; *see also In re Oil Spill by the Oil Rig Deepwater Horizon*, 841 F.Supp.2d 988, 1002–03 (E.D. La. 2012) (upholding contractual indemnification for damages arising from alleged gross negligence). Accordingly, under the plain text of both OPA 90 and the parties' Contracts, Anadarko's claimed consequential damages are barred and unrecoverable.

## V. CONCLUSION

For the foregoing reasons, MPOG respectfully requests that the Court dismiss Anadarko's claims for consequential damages in Anadarko's Second Amended Complaint with prejudice.

Dated: October 13, 2026

Respectfully submitted,

**BRACEWELL LLP**

By: */s/ Stephen B. Crain*

Stephen B. Crain
(T.A./pro hac vice)
Texas State Bar No. 04994580
Joshua T. Windsor
(pro hac vice)
Texas State Bar No. 24110541
Haley M. Bernal
(pro hac vice)
Texas State Bar No. 24132533
711 Louisiana Street, Suite 2300
Houston, TX 77002
Tele: (713) 221-1305
Fax: (800) 404-3970

Email: stephen.crain@bracewell.com
Email: joshua.windsor@bracewell.com
Email: haley.bernal@bracewell.com

and

**MILLER HAHN, PLLC**

*/s/ Stephanie D. Skinner*
Stephanie D. Skinner (#21100)
Kent B. Ryan (#18418)
365 Canal St., Ste. 860
New Orleans, LA 70130
Tele: (504) 684-5044
Fax: (866) 578-2230
Email: kryan@millerlaw-firm.com
Email: sskinner@millerlaw-firm.com

**ATTORNEYS FOR MAIN PASS OIL GATHERING COMPANY, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of October 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to those who are on the list to receive e-mail notices for this case, having enrolled in this Court's CM/ECF program and otherwise consented to receive notice and service via CM/ECF. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants.

*/s/ Stephanie D. Skinner*