**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **MAIN PASS OIL GATHERING COMPANY, LLC**<br><br>***Plaintiff,***<br><br>**v.**<br><br>**SUBSEA 7 MARINE (US) INC.**<br><br>***Defendant.*** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. 25-00890**<br><br>**JUDGE IVAN L.R. LEMELLE**<br><br>**MAG. JUDGE EVA J. DOSSIER** |

**PLAINTIFF MAIN PASS OIL GATHERING COMPANY, LLC'S RESPONSE IN OPPOSITION TO DEFENDANT SUBSEA 7 MARINE (US) INC.'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

Plaintiff Main Pass Oil Gathering Company, LLC ("MPOG") files its Response in Opposition to Defendant Subsea 7 Marine (US) Inc.'s ("Subsea 7") Memorandum in Support of Motion to Compel ("Motion") (ECF No. 79-1) and respectfully shows as follows:

## I. INTRODUCTION

Subsea 7's Motion paints a picture of obstruction and delay that does not match the record. MPOG has been and remains engaged in a diligent, good-faith discovery process in a case involving voluminous records spanning decades, highly technical data, and ongoing administrative proceedings. Discovery is not complete, nor should it be: Under the operative scheduling order, discovery does not close until May 4, 2027. *See* Am. Sched. Order (Dkt. 48). At best, Subsea 7's Motion seeks this Court's premature intervention in a discovery process that is proceeding in accordance with the Court-ordered timeline and the Federal Rules of Civil Procedure. Remarkably, Subsea 7 itself *agreed* to the very process it now seeks to upend. The parties jointly sought, and the Court granted, an extended schedule in recognition of "the complexities inherent

in this case, and the practical realities presented by the scope of discovery . . . ." *See* Jt. Mot. for Status Conf. (Dkt. 46) at 1; Am. Sched. Order (Dkt. 48).

Contrary to Subsea 7's unfounded characterizations, MPOG has consistently complied with its discovery obligations. MPOG has repeatedly confirmed in correspondence and in conference that it is not withholding responsive, non-privileged documents based on the objections it has preserved, with the specific exceptions of Request for Production ("RFP") Nos. 3, 26, 31, 32, and 35. Only RFP No. 3 has been put in issue by Subsea 7's Motion. Likewise, MPOG has repeatedly confirmed that it will honor its obligation to supplement as additional information becomes available. And it has in fact done so in the Rule 26 disclosures it served on September 29, 2026. The fact that a privilege log has not yet been produced (by any party) reflects the ordinary and ongoing work of compiling one in a document-intensive case—not a refusal to do so. MPOG is working on its privilege log and will produce it.

For these reasons and those set forth below, the Motion should be denied.

## II. BACKGROUND

This case concerns a November 2023 release from the MPOG Pipeline, a subsea crude oil gathering system spanning approximately sixty-nine miles with six connection points receiving crude oil from seven offshore production platforms.[1] Subsea 7 served written discovery on MPOG on January 26, 2026. MPOG served responses on March 12, 2026, and has since made rolling document productions. To date, MPOG has made the following document productions:[2]

- **March 27, 2026**: MPOG_EDLA00000001–MPOG_EDLA00005048

[1] Subsea 7's Motion includes a lengthy description of the purported "facts" of the case. None of it is relevant to the instant Motion. So, while MPOG disputes Subsea 7's characterization of the underlying facts, MPOG does not address those matters here.

[2] MPOG notes that it re-served its first three sets of documents on August 4, 2026, after Subsea 7 indicated that it was having difficulties with the initial format of the productions.

- **May 6, 2026**: MPOG_EDLA00005049–MPOG_EDLA00005305
- **May 26, 2026**: MPOG_EDLA00005306–MPOG_EDLA00005750
- **September 8, 2026**: MPOG_EDLA00005751–MPOG_EDLA00042902

Each set of documents was produced in fully searchable format and, where available, with accompanying metadata indicating each document's author, sender, recipient, date created, date sent, date received, file-type, file-name, and file-path.

On July 2, 2026, Subsea 7 sent a letter identifying purported deficiencies in MPOG's responses. Mot. Ex. 4 (Dkt. 79-5). MPOG responded on July 13, 2026 (the "Response Letter"), addressing each issue Subsea 7 raised, clarifying the scope of MPOG's objections, and confirming that MPOG was not withholding documents except as to Request for Production Nos. 3, 26, 31, 32, and 35. A true and correct copy of the Response Letter is attached as Exhibit A. Subsea 7 and MPOG conferred on these issues on July 16, 2026. Since that conference, as indicated above, MPOG has continued to produce documents, and to the extent further responsive, non-privileged documents are discovered, MPOG has committed to supplement its productions in accordance with the Federal Rules.

On October 12, 2026, Subsea 7 filed its Motion, broadly complaining both that MPOG has produced too little and too much. Subsea 7's Motion presents four (4) global criticisms on the following grounds: (i) MPOG's purportedly "boilerplate" objections; (ii) alleged requirements for responding to Requests for Production; (iii) the lack of a privilege log;[3] and (iv) MPOG's vagueness objections. Additionally, the Motion asserts thirteen (13) particular complaints with MPOG's discovery responses to date. As discussed in detail below, MPOG has complied (and of

[3] MPOG does not contest its responsibility to provide a privilege log and has already agreed to provide one. Accordingly, Subsea 7's argument on this ground is not addressed here.

course will continue to comply) with the applicable Federal Rules and the governing scheduling order. The relief Subsea 7 seeks is therefore neither justified nor necessary.

## III. ARGUMENT

### A. MPOG Is Fulfilling, and Has Repeatedly Confirmed It Will Continue to Fulfill, Its Discovery Obligations.

Much of Subsea 7's Motion is framed as though MPOG disputes its basic discovery obligations under the Federal Rules. This is incorrect. MPOG has confirmed in correspondence, conference, and conduct the scope of its compliance.

*First*, as to MPOG's purportedly "boilerplate" objections and withholding: Subsea 7's assertion that MPOG's objections are "boilerplate" does not make them so. In both its correspondence and in conference, Subsea 7 has refused to identify the specific MPOG objections that are supposedly "boilerplate." And MPOG's Response Letter identified the specific RFPs as to which MPOG is standing on its objections—RFP Nos. 3, 26, 31, 32, and 35—and further confirmed that MPOG is not withholding responsive, non-privileged documents based on its objections to any other RFP. Subsea 7's suggestion that MPOG is "hiding behind" its objections is simply false, and MPOG has been forthright in its explanation of its objections.

*Second*, as to the identification of documents in response to Requests for Production: Subsea 7 cites two discovery orders for the proposition that MPOG must "specifically identify[] the responsive documents in [its] corresponding discovery responses." Mem. (Dkt. 79-1) at 7–8 (citing *Rosalez Funez v. E.M.S.P., LLC*, No. 16-1922, 2016 WL 5337981 (E.D. La. Sept. 23, 2016) (Roby, M.J.), and *Mr. Mudbug, Inc. v. Bloomin' Brands, Inc.*, No. 15-5265, 2017 WL 111268 (E.D. La. Jan. 11, 2017) (Roby, M.J.)). These opinions are not controlling, nor do they square with the plain text of the Federal Rules or the more recent rulings of this Court. As the Court observed in *Whale Capital, L.P. v. Ridgeway*, "[a] party responding to a Rule 34 request must

either produce documents 'as they are kept in the usual course of business' ***or*** 'must organize and label them to correspond to the categories of the request.'" Civ. Action No. 22-2570, 2024 WL 838505 (E.D. La. Feb. 28, 2024) (Currault, M.J.) (quoting Fed. R. Civ. P. 34(b)(2)(E)(i)) (emphasis added). Thus, a party may produce documents "either by specifically indexing each document to the request to which it was responsive, ***or***, failing that, by turning over the documents with the business's filing system or other organizational structure still intact and useable by the requesting party." *Id.* (emphasis added); *see also* Wright & Miller, 8b *Federal Practice & Procedure* § 2213 (3d. Ed.) ("Requiring . . . [that] requested materials be segregated according to the requests would impose a difficult and usually unnecessary additional burden on the producing party."). Subsea 7 would have this Court ignore the ***or*** that springs directly from the Federal Rules.

Here, as permitted by the Federal Rules, MPOG has elected to produce documents "as they are kept in the usual course of business." *See* Fed. R. Civ. P. 34(b)(2)(E)(i). As noted above, MPOG's document productions are fully searchable and include each document's accompanying metadata, which indicates, as applicable, the author, sender, date created, date sent, date received, recipient, file-type, file-name, and file-path. And importantly with respect to MPOG's responses, the Federal Rules *require* that, save where an objection is lodged, "the response *must* either state that inspection and related activities will be permitted," or the responding party "may state that it will produce copies of documents or of electronically stored information . . . ." *Id.* 34(b)(2)(B) (emphasis added). That is precisely what MPOG has done in its responses to Subsea 7's Requests for Production.[4] Subsea 7 cannot properly seek relief from MPOG's compliance with Rule 34.

---

[4] MPOG further observes that the format of its responses to Subsea 7's RFPs complies not only with the plain text of the Federal Rules (and the local rules of the Eastern District of Louisiana) but also with the great weight of recent authorities that have considered this issue. *See, e.g.*, *OYO Hotels Inc. v. Om Chamunda LLC*, 2023 WL 3491742, at *2 (N.D. Tex. May 16, 2023); *Santella v. Grizzly Indus., Inc.*, 2011 WL 6306315, at *2 (W.D. Tex. 2011); *Alexander v. Abbott Labs., Inc.*, 2014 WL 12547165, at *2 (S.D. Ill. 2014) ("Having chosen the usual course of business alternative in producing documents, a responding party need not categorize the production or label and organize them to correspond to a specific request."); *Del Socorro Quintero Perez v. United States*, 2016 WL 304877, at *5 (S.D. Cal.

*Third*, as to MPOG's vagueness objections: Subsea 7 requests that the Court "strike every vagueness objection" from MPOG's responses. Mem. (Dkt. 79-1) at 10. But Subsea 7 does not even attempt to defend its widespread use of undefined terms that are facially ambiguous (e.g., "significant events" and "stability"). Subsea 7 also complains that in several instances (RFP Nos. 4, 8, 9, 12, 27) MPOG provided its interpretation of the call of each respective request. Per Subsea 7, such compliance with customary practice "narrow[s]" the scope of its requests. *Id.* To date, however, Subsea 7 has yet to specify *any* instance in which it disputes MPOG's interpretation or believes that MPOG misunderstood the call of any particular request. Not only, then, has Subsea 7 failed to establish a right to the relief it seeks; it has also failed to carry out this Court's good-faith conference requirement with respect to this issue.

**B. Subsea 7's Criticisms of MPOG's Specific Responses Are Unfounded.**

In addition to its global complaints, Subsea 7 also raises thirteen (13) purported deficiencies in MPOG's discovery responses. Only one of these particular criticisms relate to a Request for Production as to which MPOG has withheld responsive documents.[5] For concision's sake, MPOG addresses the thirteen (13) purported deficiencies in four categories: (i) the disputed RFP No. 3; (ii) the remaining referenced RFPs; (iii) Interrogatory Nos. 5 and 12; and (iv) Interrogatory Nos. 10 and 14.

**1. Request for Production No. 3—MPOG's "Organizational Structure"**

RFP No. 3 seeks broad discovery ("all documents") relating to MPOG's corporate formation, ownership, and organizational structure, including its relationship to affiliated entities.

2016) (quoting Wright & Miller, 8b *Federal Practice & Procedure: Civil* § 2213 (3d ed. 2016)); *Nupson v. Schnader Harrison Segal & Lewis LLP*, 2021 WL 1293557, at *6 (E.D. Pa. 2021) ("Defendants had no duty to correlate materials to specific document requests" where they "provided text-and date-searchable ESI to Plaintiff.").

[5] As noted above and in the Response Letter, MPOG indicated that it was standing upon its objections as to RFP Nos. 3, 26, 31, 32, and 35. Of these, Subsea 7 has moved for relief only as to RFP No. 3. And even as to this RFP, MPOG's withholding is only partial, as explained below.

Not only is this request for "*all* documents" facially overbroad and burdensome, but as stated in MPOG's Response Letter, this information does not make any fact of consequence to the claims or defenses in this products-liability action more or less probable, as required for discoverability under Federal Rule of Civil Procedure 26(b)(1). Moreover, in the parties' July 2026 conference, Subsea 7 stated (as it now states) that it needed documents sufficient to show the relationship between MPOG and its affiliates. Regardless of the relevance of that information, (a) such documents are already publicly available online (and have been for years) as part of the record in ongoing administrative proceedings,[6] and (b) MPOG did in fact produce various charts illustrating the "relationship" information Subsea 7 purportedly seeks. Perhaps, then, the burden of production really is the point, after all.[7]

**2. RFP Nos. 5, 10, 13, 14, 18, 20, 22, 23, and 25 and "Equal Accessibility"**

With respect to the remaining objections to RFPs addressed in the Motion (RFP Nos. 5, 10, 13, 14, 18, 20, 22, 23, and 25, and the equal-accessibility objections raised in response to RFP Nos. 12, 13, 16, 17, 21, 27, and 28), MPOG's responses and Response Letter confirmed that MPOG is not withholding responsive, non-privileged documents on the basis of those objections and that MPOG intends to continue producing responsive documents as they are collected and reviewed. Indeed, MPOG has produced documents responsive to each of the referenced RFPs. Because MPOG is not withholding documents based on these objections, there is no live dispute

[6] Notably, Subsea 7 is unquestionably aware of the existence and accessibility of these documents (which can be accessed at https://data.ntsb.gov/Docket/?NTSBNumber=PLD24FR001 (the "NTSB Docket")) given that Subsea 7's Motion Exhibit 5 (the Supplemental Submission of Third Coast Infrastructure, LLC) is a document pulled from the NTSB Docket.

[7] Subsea 7 also claims that MPOG's "obstructive discovery practices" resulted in Subsea 7 "incurr[ing] the time and expense of filing a claim against and serving" an unaffiliated entity (Third Coast Midstream, LLC). Mem. (Dkt. 79-1) at 11. To reiterate, the potentially relevant affiliates of MPOG are disclosed on the NTSB Docket and in MPOG's productions. And it is disappointing that the undersigned's September 30 call to Subsea 7's counsel regarding an apparent case of mistaken identity would be characterized to this Court as some act of fictive "obstruction" rather than the professional courtesy it was intended to be.

for the Court to resolve as to those requests beyond (perhaps) the pace of MPOG's production—a matter governed by the scheduling order, with which MPOG is in compliance.

**3. Interrogatory Nos. 5 and 12—Alternative Design Allegations**

Subsea 7's effort to compel further answers to Interrogatory Nos. 5 and 12 improperly seeks to use a motion to compel to leapfrog the expert-disclosure process the Court's own scheduling order establishes. Interrogatory No. 5 asks MPOG to identify and describe each specific alternative connector design it contends was feasible and available at the relevant time, to state the basis for that contention, and to explain how the alternative would have prevented the leak. Interrogatory No. 12 goes further still, expressly asking MPOG to identify each alternative design, device, or method it contends should have been used, and to cite the industry standards, publications, or expert opinions supporting that position. Interrogatory No. 12 is thus *explicitly* a request for expert opinion, and Interrogatory No. 5 is not meaningfully different given its demand for the engineering basis for feasibility and causation. Both interrogatories ask MPOG to marshal engineering and industry-standard support for a design-alternative contention, which is precisely the subject matter of a Rule 26(a)(2)(B) expert report, not a fact interrogatory.

Whether an alternative pipeline connector design was technically and economically feasible, whether it would have functioned as intended under the operating conditions the MPOG Pipeline experienced, and whether it conformed to or exceeded applicable industry standards are inherently matters of engineering opinion requiring specialized technical analysis. They are not matters of pure historical fact that a lay corporate witness can simply recite. And under the Amended Scheduling Order, written expert reports "fully setting forth all matters about which [the experts] will testify, and the basis therefor," are not due from MPOG until March 5, 2027, nor from Subsea 7 until April 5, 2027. Am. Sched. Order. (Dkt. 48) at 2. Compelling MPOG to provide now the substantive engineering bases for its design-defect and alternative-design

contentions would require MPOG to disclose expert opinion nearly five months before its expert disclosure deadline. MPOG's Complaint and interrogatory responses reflect its contention that feasible alternative designs existed; MPOG is not required to convert that contention into a fully developed expert opinion, complete with citations to industry standards and publications, before the Rules and the scheduling order so require.

**4. Interrogatory Nos. 10 and 14—Damages and Persons with Knowledge**

As to Interrogatory No. 14 (itemization of damages) and Interrogatory No. 10 (identification of persons with knowledge), on September 29, MPOG served Rule 26 disclosures identifying persons with knowledge and its claimed damages. *See* Fed. R. Civ. P. 26(e) (requiring a party to supplement its interrogatory answers "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, *and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing*" (emphasis added)). Furthermore, MPOG will of course supplement its discovery responses as additional responsive information is uncovered. Accordingly, MPOG does not believe there is a live dispute as to Interrogatory Nos. 10 and 14.

## IV. CONCLUSION

Subsea 7 concludes its Motion by observing that this is "a significant case." True. All the more reason, then, for an orderly discovery process that complies with the Federal Rules and the governing scheduling order. Subsea 7's request for relief that is unnecessary and to which it is not entitled should therefore be denied. Accordingly, Plaintiff respectfully requests that the Court deny Defendant Subsea 7 Marine (US) Inc.'s Motion to Compel.

Dated: October 19, 2026

Respectfully submitted,

**BRACEWELL LLP**

By: */s/ Stephen B. Crain*
Stephen B. Crain
(T.A./pro hac vice)
Texas State Bar No. 04994580
Joshua T. Windsor
(pro hac vice)
Texas State Bar No. 24110541
Haley M. Bernal
(pro hac vice)
Texas State Bar No. 24132533
711 Louisiana Street, Suite 2300
Houston, TX 77002
Tele: (713) 221-1305
Fax: (800) 404-3970
Email: stephen.crain@bracewell.com
Email: joshua.windsor@bracewell.com
Email: haley.bernal@bracewell.com

and

**MILLER HAHN, PLLC**

*/s/ Stephanie D. Skinner*
Stephanie D. Skinner (#21100)
Kent B. Ryan (#18418)
365 Canal St., Ste. 860
New Orleans, LA 70130
Tele: (504) 684-5044
Fax: (866) 578-2230
Email: kryan@millerlaw-firm.com
Email: sskinner@millerlaw-firm.com

**ATTORNEYS FOR MAIN PASS OIL GATHERING COMPANY, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of October 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to those who are on the list to receive e-mail notices for this case, having enrolled in this Court's CM/ECF program and otherwise consented to receive notice and service via CM/ECF. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants.

*/s/ Stephanie D. Skinner*